This was an appeal from a decree of the late Judge of the High Court of Chancery.
The bill states that the complainant is administrator of Ambrose Lipscomb, late of Hanover County, deceased ; that, in October, 1790, Richard Littlepage instituted a suit against the said decedent, in Hanover Court, and obtained a judgment, on an account, for the sum of 121. 19s. 3d.; that, from a settlement and receipt, (exhibited with the bill,) the.( complainant believes his intestate to have settled with and paid to Thomas Starke the sum of 701. 14s. 10d. in discharge of taxes for the years 1787, 1788, 1789 and 1790, and of other accounts ; that he believes the said Starke acted as deputy-sheriff, in the said County of Hanover, during the same years, and was duly authorised to receive said taxes, fees, &c.; that his intestate, as appears by a receipt dated the 2d of March, 1783, paid William Tompkins, (who the complainant believes also acted as a deputy-sheriff,) ten pounds in a warrant: from which exhibits the complainant believes that- his intestate, on the 29th day of October, 1790, was indebted to Littlepage in the sum of 121. 19s. 3d. and no more : that, since the death of his intestate, *Littlepage brought suit against him as administrator : that the said suit was dismissed for want of a declaration, hut afterwards reinstated on motion: that he did not know that the same could be proceeded in, without some process served on him after it was reinstated : that the verdict was therefore by surprise : that the amount recovered was 2131. 14s. 71-2d., without allowing to his intestate any credit, except for 261. 4s. 9 l-2d.; that if he had been apprised of the trial, he could, as he believes, have satisfied the Jury that nothing was due; he therefore prayed an injunction to the judgment, and for general relief.
The injunction being granted, Richard Littlepage filed an answer to the following effect:
That in the year 1783, he qualified as deputy-sheriff, in Hanover, under Geddis Winston, and continued to act as such for the years 1783, 1784, 1785, 1786, 1787, 1788 and 1789, during which years the intestate of the complainant became indebted to him in the sum of 1031. 10s. 3 l-2d. specie, and 361. 6s. 41-2d. certificates, as per account annexed : that, on the 1st of May, 1798, a balance was due him of 1411. 14s. 3d. specie, and 581. 15s. 8d. certificates, including interest to that day on both sums ; that, on this account, the judgment was rendered against the complainant, as administrator, for 2131. 14s. 7 l-2d. and costs ; that the verdict was not obtained by surprise ; that while the cause was depending, and twelve months before the verdict, the complainant had an interview with him, and proposed a meeting to settle the accounts; but the complainant failed to attend at the appointed time and place, and the defendant was obliged to proceed in his action : that the suit against the complainant’s intestate, in which the verdict for 121.19s. 3d. was rendered, was upon an old private account, of long standing, annexed to the answer; that all the items in the said account were just; but, for want of legal proof, no more than the last mentioned sum was recovered : that Starke acted as a deputy with him during the year 1787, 1788, and 1789; that Lipscomb had two estates in Hanover ; one in the district allotted to Starke, and one in the respondent’s limits; that whether any part of the taxes within the said limits was included in the sum paid Starke, he cannot speak with certainty; but he knows that part of that sum was for the taxes of 1790, when the respondent did not act: that Tompkins was deputy-sheriff in Hanover, in 1781 and 1782, and had nothing to do with the taxes of 1783 ; and that his receipt cannot affect*the respondent: that the reason his account against Lipscomb for taxes was kept separate from his private account, was, because Lipscomb had agreed *205 with him, in ca.se he would grant him indulgence for the said taxes, to indemnify and save the respondent harmless by paying to him all such damages as the Commonwealth might recover of him in consequence of his failing to pay in due time the said taxes into the treasury : that when his property was, in 1792 and 1793, under execution for a balance due the public, he urged Lipscomb to pay what he owed; who gave strong assurances of payment, but never made any during his life ; and that after his death the respondent was constrained to sue.
On the 16th of March, 1801, the suit abated by the defendant’s death, and was afterwards revived against Wm. O. Winston, his administrator.
An account was directed ; and the commissioner made a report, in which he charged the estate of Ambrose Lipscomb, the complainant’s intestate, with certificate and specie taxes for the years 1783, 1784, 1785 and 1786, and with the certificate and specie taxes on John Lipscomb’s estate for 1783, 1784, and 178S — rated the certificates at their nominal amount, deducting only five per cent, for depreciation of value, and allowed interest, on the several taxes, from the times when the same were respectively payable: but disallowed the claim of Littlepage’s estate for the taxes of the years 1787, 1788, 1789 and 1790, and that of Lipscomb’s estate for a credit on account of the ten pounds stated to have been paid to William Tompkins. The last mentioned credit was not admitted, because the receipt was dated in 1783, and Littlepage claimed no taxes prior to those of 1783, which were collectable in 1784. In estimating the value of the certificates, the commissioner was governed by a certificate from Messrs. Pickett, Pollard, & Johnston, stating the present value of such paper ; and allowed the smallest of two prices at which they said they were selling. Sundry depositions and affidavits were exhibited before the commissioner, by the complainant, stating various circumstances, which, together with the mode of commencing the account of Littlepage against Lipscomb, for sundry items, (in which the taxes were not included,) the several nonsuits at law suffered by Littlepage, and the length of time, were relied on as presumptive proof that the claim had been fully discharged. Opposed to this circumstantial evidence, the defendant filed several depositions : but the commissioner rejected them on *both sides. He also did not allow to Littlepage’s estate several items of a private nature, which be had blended with his account for taxes. — .-To this report the complainant excepted.
1. Because the charge of taxes for the years 1783, 1784, 1785 and 1786, ought not to have been allowed ; since Littlepage, long after those taxes were due, had sued Lipscomb ; stating an account up to a posterior date, in which the said taxes were not comprehended ; and the circumstance that the taxes for the subsequent years had been paid, ought (as in the case of rent-arrear) to be received as proof that nothing was due for the preceding years.
2. Because the commissioner had charged the complainant with the taxes on John Lipscomb’s estate, on no other evidence but that of Ambrose Lipscomb’s having been his administrator; although Littlepage himself had neither made this charge in his account, nor insisted on it in his answer ; the same being first brought forward in the commissioner’s report.
3. Because interest had been improperly charged, there being no right to charge interest, except on the sums paid by Little-page for Ambrose Lipscomb, and no evidence being adduced that any such payment had ever been made.
4. Because the certificates were debited at their present advanced value, whereas, if the complainant was ever chargeable with them, it could only be according to their value when he became chargeable.
5. The complainant excepted generally to the charges in the report, contending that by the proofs exhibited nothing appeared to be due to the estate of Littlepage, and that his answer, having been disapproved in sundry particulars and shewn to be wholly unworthy of credit, ought not to be regarded.
6. He also excepted to the principle avowed by the commissioner of throwing the onus probandi on the complainant, whereas, the trial at law having been by surprise, the evidence to support the account produced by Littlepage ought now to be the same with that required before a Jury, in which respect its incompetency was manifest.
The chancellor by his decree confirmed the report ; and directed the injunction awarded the complainant to be dissolved as to 1591. 8s. 7d. (the sum stated by the commissioner to be due,) and perpetuated as to the balance ; and the costs to be equally borne by the parties : from which decree, Lipscomb appealed.
*Randolph, for the appellant, insisted on the various exceptions above mentioned, and contended that he came properly into a Court of equity, on the ground that the verdict at law was obtained by surprise, no notice having been given of the reinstatement of the suit.
He observed, in support of the 4th exception, that, if Lipscomb had been a delinquent trustee, it might have been reasonable to charge him with the nominal amount of the certificates : but here the case was widely different; the sheriff had probably bought those certificates at only 5s. in the pound, and ought to receive no more than he gave for them. Littlepage was in reality a trustee for Lipscomb; and, upon principle, as such, should have done the best he could, and not have speculated for his own advantage. The case of an executor is parallel to this. If he pays a debt of his testator at 5s. in the pound, he cannot charge the whole-amount to the estate.
“In odium spoliatoris sunt omnia prajsum-enda.” But that maxim does not apply to. this case. The commissioner therefore ought not to have presumed against Lipscomb without proof.
JUDGE) LYONS.
If you open an account in equity, you can only do it so far as you can shew error.
Randolph. This is the rule where the party applying had an opportunity of defence at common law; but not otherwise.
Nicholas, for the appellee, contended,
I. That the exceptions had been properly *206 overruled. As to the first exception, he said it was the practice of Eittlepage to agree with the people that, in case of his indulging them for taxes, they were to pay him any damages and charges which might be recovered by the Commonwealth in consequence of their failing to pay.
JUDGE TUCKER.
Is not this a turpis contractus ?
Nicholas. It might have been a fair agreement to provide against contingencies. But this is unimportant, as we do not claim the damages, and they have not been allowed us. The object of the argument is only to explain the reason of Eittlepage’s keeping a separate, account for the taxes.
*There is no analogy between the case of rents and this of taxes. Such is the connexion between a tenant and his landlord, that payment of the prior rent is presumable where the posterior has been paid. But, in this instance, the greater part of Eipscomb’s estate was in Starke’s precinct; and it does not follow, because Starke, by his assiduity, made collections for certain years, that other deputies did the same for the preceding years. Receipts are produced for the payments to Starke, and for a payment in 1793. This shews that Eipscomb was in the habit of taking care of receipts. Why then does he not produce receipts for the other payments, if they ever were made ?
As to the second exception, the words of Tompkins’s receipts, dated March 2, 1783, shew that the taxes on John Eipscomb’s land were paid by Ambrose Eipscomb his administrator.
The third and" fourth exceptions are not better founded. Where the sheriff agrees to pay a man’s taxes for him, his liability to the public is a sufficient consideration for him to recover the money. It is said there is no proof that this money has been paid into the treasury. But the land was listed on the commissioner’s books ; the sheriff was charged according to those books: judgments have been obtained on behalf of the Commonwealth against him ; and Eipscomb has been exonerated. The sheriff was liable to damages and interest, and ought, therefore, to recover interest at least. There is no reason to disallow him the present current value of the certificates.
In answer to the fifth exception, Mr. Nicholas took a view of the testimony, and compared the various depositions with each other ; from which he inferred that a balance was established to be due from Eipscomb to Eittlepage, and that no part of the evidence contradicted the answer.
The sixth exception, he observed, was groundless, because the commissioner certainly proceeded on proofs before him ; not on a presumption against the complainant. But, as there had been a trial before a Jury, the utmost the complainant in Chancery could do was to surcharge and falsify the account of the plaintiff at law. The complainant is said not to have been present at the trial. But the plaintiff at law could not have obtained a judgment unless he had proved his account.
II. The commissioner did wrong in rejecting the claim of Eittlepage for the taxes of the years 1787,1788, 1789, *and 1790, the amount of which ought now to be added to the sum decreed the appellee.
It was a mistake in the commissioner to suppose that Starke’s receipts covered all the taxes due from Eipscomb for those years ; since he had other lands in parts of the County not in Starke’s precinct.
III. As there was no proof of surprise on the complainant, and it is denied in the answer, the injunction ought not to have been sustained.
A defendant’s own neglect is no reason to permit his going into Chancery. A sufficient reason should be shewn for his not making a defence at law. The only reason assigned here, is, that he did not know that the suit could be reinstated on motion. Ignorance of law is no excuse. But, as it appears, he was acquainted with one point of law, viz. that the suit could be dismissed at the rules for want of a declaration, it is presumable he must have known something of another; that it could be reinstated. No doubt, he consulted counsel as to the steps he took; and his counsel ought to have informed him that the dismission at the rules was not conclusive. Besides, the suit, after the reinstatement, remained on the docket twelve months before the trial.
Call, on the same side, in addition to the points urged by Nicholas, said it was no objection now to the allowance of part of Eittlepage’s claims, that such part had not been exhibited to the Jury; that, if.such an objection had been intended, it should have been pleaded in abatement to the suit at law ; that, even if it be true, at law, that a judgment may be pleaded in bar of a subsequent suit for articles of a prior date to the first writ, it is not so in equity ; substantial justice only being regarded there.
As to the case of rents, he observed that, if the acquittance for a subsequent year’s rent is under seal, it is a bar to the claims for preceding years ; but not otherwise however, the case of taxes is very dissimilar ; since the taxes of different years are due to different sheriffs.
Where there is an honest debt precedent, and an usurious contract subsequent, although that contract is void, yet the plaintiff may recover the debt originally due. According to the same principle, if the agreement on which Eittlepage relied was illegal, he has nevertheless a right to recover what was due previously to that agreement. With respect to the taxes on John Eips-comb’s estate, the practice of this coun-
try is that executors do manage *the landed estate to a certain extent, and pay the taxes on them. This is a reasonable practice, and beneficial to orphans. The charging taxes to the executors is not technically right; but is conducive to the advantage of the estate ; and, at any rate, the sheriff has a right to recover according to the charge in the commissioner’s books.
The Sth exception answers to Addison’s definition of nonsense. It cannot be confuted, because it has no point. “Ealsum in uno falsum in omnibus” extends only to this; that, if falsified in part, the answer loses the weight of being evidence. In that case it is not necessary to disprove it by two, witnesses ; but still the complainant must prove his case.
*207 As to the value at which the certificates ought to be rated, the certificate-tax was to be satisfied by a specific paper, which, by the law of the land, the individual was required to pay. 1'here is an important distinction between cases where there is a contract to deliver certain paper and where there is a right to the paper itself, independently of any contract.
Suppose a man, by will, bequeathed bank stock. At the time it ought to have been •delivered by the executor, it was worth 3 for 1 : but it afterwards rose in value to 17 for 1. Can the executor settle with the legatee at the rate of 3 for 1 ? He could not; because the legatee has a right to the specific stock. The case in similar here: for the Commonwealth (or the sheriff in its room) had a right to the specific certificates, and, therefore, is entitled to recover according to the rise in value.
Randolph, in reply. I insisted that the Court of Equity had jurisdiction, and that there had been a surprise. X acknowledge the defendant ought to have adverted to the law ; but the fact is he failed to observe it ; and the clerk certifies that nobody appeared to defend him. The question is whether failing to observe strict law is to bar a remedy in equity. If the defendant had appeared and stood the change of a trial, and then come into equity, the case would have been more against him.
Has a man a right to bring separate suits on every item in his accounts ? In assump-sit, he must include all that is due. I do not admit Mr. Call’s doctrine concerning a plea in abatement to be correct. It cannot be law that a defendant is compelled to admit the articles exhibited and plead latent articles. How could a man have pleaded in *abatement that the account comprehended all the dealings between the parties; which was what my client here insisted ?
JUDGE TUCKER.
Where judgment is obtained, and another suit brought for items prior in date to the first writ purchased, the defendant may plead in bar.
Randolph. Such is my opinion of the law, and so Mr. Call ought to have taken it.
No man can be condemned to pay money where he has discounts, even though he might have claimed them at law. The only penalty upon him is to make him pay the costs in Chancery, for his neglect at law. Many cases were decided at the late term of the Court of Chancery, where relief was given, yet the complainant made to pay the costs •
JUDGE ROANE.
Has not the case of Terrill v. Dick, 1 Call, S46, settled that point?
JUDGE LYONS.
Can a man be permitted to stand by, at a trial at law — keep his receipt in his pocket, and afterwards go into equity?
Randolph. I have always thought discount a sufficient ground for going into equity.
JUDGE ROANE.
There is always a reason assigned for not having made a defense at law.
Randolph. As to the certificates, nothing but their value at the time ought to be paid. This was only a case of a contract. The persons liable for the ceftificate-tax held not the certificates themselves. The sheriff agreed to purchase them, on their behalf, and pay them into the treasury. Therefore, nothing but the value at which he might then have bought them ought now to be claimed.
Littlepage’s having mingled, in his account for taxes, private with public claims shews they were all considered by him as homogenous; and the whole ought to have been exhibited to the Jury. This circumstance also falsifies the answer for, in that, he says that he kept the accounts separate.
I admit that thereby the answer is only set aside as evidence. But, without the answer, there has not been *'evidence enough to support his claim. The commissioner’s books are sufficient to shew the amount of the taxes due from Lipscomb ; but many other things of importance are proved by nothing but the answer.
Thursday, October 29. The Judges delivered their opinions.
JUDGE TUCKER.
Littlepage a deputy-sheriff, obtained a judgment in his lifetime against A. Lipscomb’s administrator in the County Court of Hanover for the sum of 2131. 14s. 7 l-2d. which the defendant obtained an injunction from the High Court of Chancery setting forth, among other things, that Littlepage had obtained a judgment against his testator in October, 1790, for 121. 19s. 3d. ; that he paid one Starke, (who was a deputy-sheriff with Littlepage,) for the years 1787, 1788, 1789, and 1790, 701. 14s. lOd. in discharge of taxes for those years; that, since his testator’s death, Littlepage brought a suit against himself as administrator which was dismissed at rules, but, being after-wards reinstated on motion, a verdict was obtained on a writ of inquiry for 2131. 14s. 7 l-2d. without his knowledge, as he did not know of the reinstatement; that, had he not been surprised, he believes he could have satisfied the Jury that nothing was due.
Littlepage, in his answer, states that he was a deputy-sheriff in Hanover County from 1783 to 1789, both inclusive; during which years A. Lipscomb became indebted to him in the sum of 1031. 10s. 3 l-2d. for specie taxes, and 361. 6s. 4 l-2d. for certificate taxes, as per account annexed to his answer, (which he iways may be taken as part of it,) on which account judgment for 2131. 14s. 7 l-2d. was rendered in his favour, for principal and interest to the time of trial, in Julv, 1800; denies the judgment was obtained by surprise; says the judgment against Lipscomb in his life-time for 121. 19s. 3d. was on an old private account; that his private account with Lipscomb and his account of taxes against him were kept separate; “that the reason was that the said Ambrose Lipscomb agreed with him, that, if he would grant to the said Lipscomb indulgence for his taxes, he would indemnify and save Littlepage harmless by paying to him all such damages as the Commonwealth might exact of Littlepage, in case of his delinquency in not paying up within due time the public taxes of the said County; that, owing to this circum *208 stance, and this alone, he waited, from time to time, in expectation that Lipscomb would come forward and faithfully complj' with his engagement,” &c. He answers ^equivocally, or rather denies knowing whether any part of the money paid to Starke was on account of these taxes, though Starke expressly proves he shewed him the account when he was preparing his answer.
That in 1792, or 1793,.when his own property was advertised to be sold to satisfy the balance of the revenue due from him, Lipscomb gave the strongest assurances of relief; but he never did any thing in his lifetime. He died, as the bill states, in 1794. The writ, in the suit on which he recovered, is stated by the clerk to have borne date July. 12th, 1798. On the 20th of June, 1799, there was a nonsuit, for want of a declaration, which was afterwards set aside, and on the 18th of July, 1800, the verdict and judgment enjoined were obtained.
As the defendant had, in mj' opinion, a very clear defence at law; as the reinstatement of a cause, (which may be dismissed at the rules for want of a declaration,) at the next Court, may be generally regarded as a matter of course; and, as that dismission was obtained by the defendant in person, he appears to me to have no excuse for not attending to the suit afterwards, especially as thirteen months intervened before the judgment was obtained. I therefore am of opinion that the grounds for granting the injunction, if any, were extremely slight. But, whatever defect there might be in the bill of the complainant, ás a ground for the interposition of a Court of Equity, the answer of the defendant furnishes ample reasons for that Court to relieve against a judgment, the foundation of which is not.only without any legal basis, but is actually (if we may believe the answer), bottomed upon a contract founded in maleficio.
Taking the defendant’s answer to be true, as to the foundation and cause of his action, he could neither maintain a suit thereon at law nor in equity. Not at law, for several reasons which 1 shall consider somewhat at large.
The act of Oct. 1782, c. 8, for establishing a permanent revenue, declares that the sheriff shall, from and after the first day of May, annually collect and receive from every person chargeable therewith, the taxes imposed by that act, in his County; and, in case payment be not made, on or before the first day of June, annually, the sheriff shall have power to distrain the lands or slaves, goods or chattels, which shall be found on the lands, and in possession of the person so indebted or failing, notwithstanding they may be comprised in any deed, or mortgage: and, if the owner shall not pay the taxes within five days, the ^sheriff may lawfully sell the same, &c. And the sheriff shall duly account for and pay the same into the treasury, on or before the 15th of September, annually; and, in case of failure, he is made liable to a judgment on motion, in the General Court, for the amount of the taxes due, with fifteen per cent, damages, and five per cent, interest, until paid. The provisions of this act, with some variations as to dates, are continued to the present period.
This act both creates the duty and gives, the remedy. The duty from the person chargeable with any tax is to the commonwealth not to the sheriff. The duty from the sheriff is to the Commonwealth likewise. The remedy in both cases is the remedy of the Commonwealth. Her officer the sheriff may distrain the lands, slaves, and goods of the person chargeable for taxes, for the amount thereof, but no more. The Court may give judgment against the sheriff for any neglect of duty. As the law creates no debt or duty, from the person chargeable with the tax, to the sheriff, he has no right of action, in case of nonpayment to him, but a right to distrain for them only, as the officer of the Commonwealth, and in her behalf. And it may well be doubted, if he neglected to distrain within the period limited for him to account and pay into the treasury, whether he could even distrain at any future period, unless authorised by some special act of Assembly for that purpose. The first act that I have been able to discover giving such authority is that of 1789, c. 29, amended by that of 1792, ed. 1794, c. 83, s. 29, which, by a kind of negative pregnant, declares that no sheriff shall be allowed to distrain for any taxes, after two years from the time the taxes became due, except sheriffs appointed prior to the year 1792, who shall have the power of distraining for the taxes then due for the term of eighteen months from the passing thereof;. which period was, by the act of 1794, c. 21, enlarged to the term of eighteen months from the first of October, 1793. Now, although this act enlarges the time of distraining, it does not change the remedy. The taxes due from individuals can be collected in no other way; and I take it to be clear law that where a statute not only gives a remedy but creates the duty, no other remedy can be had. Littlepage, under the operation of these last two acts, might have dis-trained for all arrears of taxes, which he asserts to have been due to him, until the last day of March, 179S. After that period, if, through neglect, he failed to collect them, he had no remedy either at law or in equity, unless some *other act of Assembly (which I have not been able to find, and which I do not believe to exist) has given one. The Court before whom the writ of inquiry was executed ought not to have suffered his account to have gone to the Jury. They were ex officio bound to look into it by the act of 1792, ed. 1794, c. 92, s. 56, and not only to have rejected it from going to the Jury, for the reason already given, but to expunge from it every item that had appeared to have been due five years before the death of Lipscomb, which would have extended to the whole account, even including those years for which the taxes most clearly appear to have been paid. Thus I take it to be clearly proved that Littlepage could not have maintained an action at law upon tnis account, although the commissioner (of whose legal talents I never before *209 had any opportunity of forming any opinion) is pleased to inform us in his report that his claim is one of the first dignity.
Nor do I conceive that Littlepage could have been more successful in , a Court of Equity. His application to such a Court for its aid ought to have been founded on a fair contract between himself and Lipscomb. But what is the contract alleged in the answer? “If, contrary to the duties of your office, you will not compel me to pay my taxes to the Commonwealth, I will indemnify you for any damages that may be awarded against you for such a breach of duty.” A contract more flagrantly founded in maleficio never was brought to the view of any Court.
It is destructive of the revenue, ruinous to all public creditors, pernicious to the public credit, and fatal to the energies of the Commonwealth, under the greatest emergencies. The record accordingly exhibits a series of judgments against the high sheriffs for whom he acted, for upwards of 19,5001. an evil of sufficient magnitude to shew the pernicious consequences of such illegal and nefarious contracts; if, indeed, such a one ever was made on the part ol Lipscomb, of which there is no proof whatever. No Court of Equity that understood even the elements of its functions could sustain a suit founded on such a contract.
But, let it be supposed that I am mistaken upon this point, and that Littlepage might have maintained an action for the taxes, and that the Court ought not ex officio to have stricken out all the charges alleged to have been due five years before Lipscomb’s death ; even in this case, he *ought to have recovered much less than he did, or nothing at all. In the account, which is annexed to his answer, and is that, I presume, which appears in the record, page 33, he charges Lipscomb which 1031. 10s. 3 l-2d. for the specie-taxes due from him, from the year 1783 to 1789, both inclusive, and 361. 6s. 4 l-2d. for the certificate-taxes for the same period ; in the whole 1391. 16s. 8d. In this account there is a credit for 161. 5s. paid in warrants, corn, &c. It is in proof that Lipscomb settled with Starke, a deputy-sheriff who acted for Littlepage, for all the taxes due for the years 1787, 1788, and 1789, amounting to 391. 6s. 3d. and paid him for the same in August, 1793; of which payments being made on that account, Littlepage, in his answer, expressly denies knowledge; though Starke proves he shewed him the account, at the very time that he was penning this falsity in his answer; with this additional circumstance, that, “after shewing him the account, Capt. Street, who was present, remarked (addressing himself to Littlepage) that it would be proper to admit a credit for those credits; when Littlepage replied that he should admit nothing but what they could prove.” What credit can be due to the answer of such a man? The falsity of it being proved in this respect, and the payment of these taxes for the last three years being also unequivocally established, is it probable, or even conceivable, if the taxes for the years 1783, 1784, 1785 and 1786, had been still due, that Lit-tlepage would have suffered his own property to have been sold under execution in 1793, rather than to have distrained for those arrears, as the act of 1792 gave him a right to do? On the contrary, is there not the strongest presumption that the taxes for those years had been previously settled and paid, and that the payment to Starke was in full of all arrears? The inference, I confess, is so strong to my apprehension that I cannot reject it; more especially when fortified with this additional circumstance, that Littlepage, not long before Lipscomb’s death, brought a suit against him, and recovered 121. 19s. 3d. only ; which proves there was not such a good understanding between them as to prevent a suit, and that this suit was instituted some time after his death. To this I will add another circumstance appearing on the face of the record. On the 24th of March, 1795, Littlepage instituted his first suit against Lipscomb’s administrator, laying his damages to one hundred pounds only. Upon this suit he was nonsuited in October, 1797, and, in July, 1798, he instituted the suit on which he afterwards recovered, and laid his damages *to four hundred pounds. By what circumstance his damages against a dead man could be quadrupled, in so short a period, it is difficult to imagine. It shews, however, that for more than two years, he estimated his claim against Lipscomb’s estate at less than one half of what he actually recovered. Even upon these grounds, I conceive the present judgment should be perpetually enjoined; and that the most fa-vourable decree for Littlepage’s representatives ought to be to direct an issue to be made up between the parties, to determine whether the taxes due from Lipscomb, from the year 1783 to 1786, both inclusive, had been satisfied and paid, or not; and further, what was the current value of the certificates proposed to be redeemed by the certificate-tax, at the several periods when the taxes payable in certificates became due; and that verdict to be certified to the Court of Chancery. But should the Court be of opinion that they ought not, for the reasons first given, to perpetuate the injunction as to the whole judgment, nor to direct such an issue as I have proposed, but to make an end of the case here; upon the principle that a Court of Equity will not interfere to deprive a plaintiff at law of any legal advantage which he may have gained, unless the party seeking relief will do complete justice by paying what is really due; (a) and that they have even gone so far, upon the same principle, as to refuse their assistance in relieving against a judgment obtained by fraud; although I think I could shew a difference between fraud in obtaining a judgment and a judgment founded in fraud or maleficio, as I think the present was; — my opinion, in that case, will be, that, rejecting the commissioner’s liberal allowance of the certificate-tax for 1783 and 1784, and the specie-tax for 1785, on John Lipscomb’s estate, not mentioned in the account annexed to the answer, nor claimed therein, and also rejecting his allowance of interest upon the taxes for 1783, 1784, 1785, and 1786, which ought not to be allowed, *210 because those tases might have been dis-trained for, (were there on official turpitude in the contract pretended but not proved in Littlepage’s answer, as a further reason for rejecting interest,) a decree ought now to be entered for 841. Ss. 5d. (the balance appearing to be due, upon the account of taxes exhibited and annexed to the answer, after allowing the credits admitted and proved as before mentioned), with interest thereon, from the time of granting the injunction to the time of pronouncing the decree; and that the judgment be perpetually enjoined for the balance.
*JUDGE ROANE.
This is an injunction to stay proceedings on a judgment obtained in Hanover Court by the intestate of the appellee against the appellant’s intestate. That judgment was regularly obtained. The allegation of surprise, even as stated by the appellant himself, cannot regularly avail him, for no man is to plead in excuse his ignorance of the law, or of the rules of the Courts; but, in this case, there is, on the contrary, the answer of the defendant and some other testimony going to shew that the appellant’s intestate was duly apprised of the continuance and existence of the suit. On the ground of surprise, therefore, I should be of opinion to overrule the appellant’s pretensions: but the appellee’s intestate having in effect admitted that the taxes of 1787, 8, and 9, were unjustly included in the judgment; having also shewn this to be the case by the testimony of T. Starke, whose evidence is very strong against him on this point; and having submitted it to the Court to make an abatement in respect of those taxes, if it should appear to the Court of Equity that they had been unjustly recovered; on these grounds I presume that the Court of. Equity had obtained a fair cognizance of the case, and might go on to adjust the judgment according to the principles of equity.
As this case existed in the trial at law, there is nothing of turpitude or illegality of consideration tending to impeach the items of which the account filed in that action was compounded. It is principally composed of debits for taxes long since due to Eittlepage, the legal and proper collector;— I say due to him, (though not for his own benefit,) because he alone had a right to receive them, to take his commissions thereupon, and grant discharges for them; and, for any thing that appeared in the trial at law, it was a fair contract, on the part of the sheriff, to pay the taxes of the appellant’s intestate to the public, and indulge him therefor a considerable time; which circumstance, and, especially, the forbearance would undoubtedly operate a consideration amply sufficient whereupon to found a recovery. Admitting, also, in this point of view, that the right of distraining for these taxes had expired, it does not follow that an action for the amount thereof, as for so much money advanced for his use, would not have been justly sustainable against the appellant’s intestate. We are not to say in this Court that every thing was not shewn in the trial at law which was necessary to support the action on the | part of the plaintiff. In the naked case, therefore, as existing in the trial at *law, there is nothing to impeach the fairness of the contract. The Court of Law was as competent as a Court of Equity to relieve against, or rather to refuse to enforce the performance of an illegal contract: but when that is not done by the Eaw-Court; when this ground has not even been taken by the defendant in that Court, but, on the contrary, a regular judgment has passed against him, appearing on the face of the proceedings at law, to be free from any vicious consideration, and the defendant comes here to get relief against that judgment on another ground; by what rule ought the Court of Equity to be governed in extending to him its relief?
Admitting then that the contract, which is first stated in the answer of the appellee’s intestate, respecting the indulgence to be granted to the other party, was one contrary to the policy of the laws, and founded on considerations which would not be enforced by a Court of Justice: yet I hold it to be an established principle of equity not to disturb a regular judgment at law,- unless the party praying to impeach it will do on his part what justice requires to be done, (a) The only question, therefore, for us to de'cide at present, is how much is really due (throwing the consideration of the contract entirely out of the question) from the one party to the other.
In making this inquiry I have taken up the commissioner’s report, and approve the same, except as it is now objected to. — 1st. I object to the report, so far as it inserts the certificate-tax on John Lipscomb’s estate, for 1783 and 1784, and the specie-tax on the same for 1785; since these were not claimed in the action at law. — 2dly. I object to the price at which the certificates are rated, and think their values at the respective times when payable into the treasury with interest should only be allowed. The contract as to the certificates was either a purchase of so many certificates in the hands of the sheriff for which their then values with interest were agreed to be paid; or, as it now seems from Eittlepage’s answer, a contract of indemnitj' to Littlepage: —and, if the latter, he should not, when he, perhaps, has paid the Commonwealth at the rate of 5s. in the pound, now recover them at par, with legal interest: — this would be a contract on speculation, and not a mere contract of indemnity.
With these variations, I approve of the report; and, when the account shall have been reformed pursuant thereto, I am of opinion that theinjunction be perpetual, as to the credits thence arising to the appellant, (in addition *to those already produced by the report,) and be dissolved as to the balance.

 Paine v. Dudley, 1 Wash. 199.

 See title case of Payne v. Dudley, executor of Fleet, 1 wash. 196.